UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIMALKUMAR HARSHADBHAI PATEL,<br><br>**Plaintiff,**<br><br>v.<br><br>MERRICK GARLAND, *et al.,*<br><br>**Defendants.** | Civil Action No. 21-2915 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Vimalkumar Harshadbhai Patel, a citizen of India residing in South Carolina, sought a U visa from U.S. Citizenship and Immigration Services in 2015, which was denied in 2020. Since then, Plaintiff has filed four Motions to Reopen and Reconsider with USCIS, all of which have been unsuccessful. He then brought this suit, seeking to have his applications formally reopened, arguing that the USCIS action here was arbitrary and capricious, an abuse of discretion, and contrary to the Administrative Procedure Act. Defendants — the Attorney General, the Secretary of Homeland Security, the Director of USCIS, and the Director of the USCIS Nebraska Service Center where he applied — now move to transfer this case to the District of South Carolina. Alternatively, they ask for dismissal. As the Court agrees that transfer is the wisest course, it leaves open the question of dismissal for the transferee court.

**I.    Background**

According to the Complaint and its attached exhibits, Plaintiff is an Indian citizen living in Piedmont, South Carolina. He was a victim of an armed robbery that occurred in Kinston, North Carolina, on May 15, 2012. See ECF No. 1 (Complaint), ¶¶ 5, 12. In February of 2015,

1

Patel sought a U visa — a specific type of visa "set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." Id., ¶¶ 10, 13.  Some five years later, USCIS denied his application on the ground that Plaintiff has "a history of fraud and willful misrepresentation." Id., ¶ 14.

Patel had previously filed two I-130 Forms (Petition for Alien Relative) in April 2010 and August 2011, respectively, which were both denied for "fraud indicators and/or suspect documents." Id.  The fraud, according to USCIS, stemmed from Patel's having two alleged marriages with no evidence of divorce for either — the first in India to an Indian citizen in 2001 and the second in the United States to a U.S. citizen in 2009. Id.  The 2010 I-130 Form, however, indicated that Plaintiff had never previously been married, and the 2011 I-130 Form listed his current marital status as "single." Id.

Between May 2020 and May 2021, Patel filed four separate I-290B Motions to Reopen and Reconsider, seeking to reverse the denial of his U visa Application. Id., ¶¶ 15–20.  For reasons that are unclear from the pleadings, he filed each Motion with the USCIS Service Center in Lincoln, Nebraska. Id., ¶ 9.  In denying all four Petitions, USCIS asserted that the initial ground of denial — the fraud indicators related to Plaintiff's two marriages — had not been overcome. Id., ¶¶ 15–21.

He subsequently brought this suit in November 2021, claiming that the denial of his application was arbitrary and capricious, an abuse of discretion, and contrary to the APA. Id. at 9.  The Government now moves to transfer venue or alternatively to dismiss the case.

2

## II. Legal Standard

As the Court decides that transfer is appropriate, it sets out only that standard. Under 28 U.S.C. § 1391(b), venue will lie in any district where (1) the defendant resides, (2) "a substantial part of the events or omissions giving rise to the claim occurred," or (3) if there is no other district where suit may be brought, where the defendant is subject to personal jurisdiction. Even if a case is properly venued, however, it need not necessarily remain there. A district court may, "for the convenience of parties and witnesses, in the interest of justice . . . [,] transfer [it] . . . to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

This Court has previously explained the standard for a transfer of venue under § 1404(a):

> To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district. Treppel v. Reason, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). The movant must also show that "considerations of convenience and the interest of justice weigh in favor of transfer . . . ." Sierra Club v. Flowers, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). This second inquiry "calls on the district court to weigh in the balance a number of case-specific factors," related to both the public and private interests at stake. Stewart Org., 487 U.S. at 29. The burden is on the moving party to establish that transfer is proper. Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996).

Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013).

## III. Analysis

The Court will proceed with the § 1404(a) transfer framework outlined above, first examining whether this case could have been brought in the District of South Carolina and next looking at the private- and public-interest factors relevant to transfer.

3

A. <u>Propriety of New Venue</u>

Because Patel has filed suit against officers and employees acting in their official capacity, 28 U.S.C. § 1391(e) governs the Court's analysis. That statute provides that venue is proper in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . [,] or (C) the plaintiff resides if no real property is involved in the action." As Plaintiff currently resides in Piedmont, South Carolina — within the jurisdiction of the District of South Carolina — and no real property is involved, this preliminary hurdle is easily cleared. <u>See</u> ECF Nos. 1-1 (Civil Cover Sheet) at 1; 6 (Pl. Opp.) at 3.

B. <u>Private- and Public-Interest Factors</u>

The "private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." <u>Douglas</u>, 918 F. Supp. 2d at 31 (citation omitted). "The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." <u>Id.</u> (citation omitted).

1. *Private-Interest Factors*

To streamline its analysis, the Court collapses the six aforementioned private-interest factors into four by considering the convenience factors together.

a. Plaintiff's Choice of Forum

While a plaintiff's choice of forum is typically afforded some deference, "this deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and

4

no particular interest in the parties or subject matter.'" Trout Unlimited, 944 F. Supp. at 17 (quoting Chung v. Chrysler Corp., 903 F. Supp. 160, 165 (D.D.C. 1995)). "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference." Jimenez v. R&D Masonry, Inc., No. 15-1255, 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) (citation and internal quotation marks omitted).

Such is the case here. Defendants request that this case be transferred to the District of South Carolina, see ECF No. 5 (Def. Mot. to Transfer and Dismiss) at 3, within which Plaintiff resides. See Compl., ¶ 5. Patel nonetheless contends that meaningful ties to the controversy exist in the District of Columbia because national policy regarding immigration applications is formulated by the Department of Homeland Security, located here in Washington. See Pl. Opp. at 7. As Defendants note, however, DHS has delegated authority to USCIS, see 8 C.F.R. § 100.1, and Plaintiff does not challenge the propriety of that delegation, nor does his suit attack DHS policy generally. When "the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia." Al–Ahmed v. Chertoff, 564 F. Supp. 2d 16, 19 (D.D.C. 2008) (citations and internal quotation marks omitted). Plaintiff's choice of forum thus receives no deference.

      b. Defendants' Choice of Forum

In deciding a § 1404(a) motion, a defendant's choice of forum is relevant, but "not ordinarily entitled to deference." Tower Labs, Ltd. v. Lush Cosmetics Ltd., 285 F. Supp. 3d 321, 326 (D.D.C. 2018) (citation omitted). As Defendants have moved to transfer to the District of South Carolina over Plaintiff's opposition, see Def. Mot. to Transfer and Dismiss at 1, "they

5

must establish that the added convenience and justice of litigating in their chosen forum overcomes" any deference to Plaintiff's choice of venue. See Tower Labs, Ltd., 285 F. Supp. 3d at 326. Since Patel's choice receives no deference here, and as other interests favor transfer, Defendants receive some, albeit minimal, deference for their choice of forum.

### c. Whether Claim Arose Elsewhere

The Court now turns to the location where Plaintiff's claim arose. "When the material events that form the factual predicate of a plaintiff's claim did not occur in his chosen forum, transfer is favored." Id. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." Nat'l Ass'n of Home Builders v. EPA, 675 F. Supp. 2d 173, 179 (D.D.C. 2009).

The USCIS Service Center that denied Plaintiff's visa application and dismissed his four subsequent I-290B Motions is located in Nebraska. See Compl., ¶ 9, Exhs. 2–5. Hence, the administrative record exists primarily in that state, establishing that the "material events that form the factual predicate of [P]laintiff's claim did not occur in [the District of Columbia]." Tower Labs, Ltd., 285 F. Supp. 3d at 326.

Nor can Patel establish a material connection to this district by naming high-ranking government officers — here, the Attorney General and the Secretary of DHS — as Defendants. The D.C. Circuit has found that "[c]ourts . . . must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia. By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993). The Complaint does not allege that either the Attorney General or the Secretary of DHS was personally involved in the contested decisions, but only that DHS "failed to supervise the

6

USCIS in Nebraska." Pl. Opp. at 9. If proper venue could be established merely by looking to the location of top agency officials and alleging the breach of a sweeping supervisory duty, "this District could become deluged with immigration cases simply because DHS and USCIS, like almost all federal agencies, are headquartered here." Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d 324, 335 (D.D.C. 2020). It seems more equitable to spread the cases around based on a plaintiff's home district. The inclusion of such officials therefore does not affect the balance of this factor, which strongly favors transfer from the District of Columbia.

                        d. Convenience of Parties, Convenience of Witnesses, and Ease of Access to Sources of Proof

The final three factors deal with convenience. The parties agree that this case involves review of an agency action and will not require witness testimony. See Pl. Opp. at 8; ECF No. 7 (Def. Repl.) at 4. Indeed, "[i]n a case involving review of an agency action, the location of witnesses is not a significant factor, but the location of the administrative record, however, carries some weight." Aftab v. Gonzalez, 597 F. Supp. 2d 76, 83 (D.D.C. 2009) (internal quotation marks and citation omitted).

As discussed above, the administrative record in this case primarily exists in Nebraska, where the USCIS Service Center that handled Plaintiff's applications is located. See Compl., ¶ 9, Exhs. 2–5. Patel acknowledges this, yet contends that the administrative record could be transferred to this district with little added inconvenience. See Pl. Opp. at 8. Of course, it follows that the record could just as easily be transferred to South Carolina.

Plaintiff also argues that the location of his counsel in Atlanta favors finding venue convenient in D.C. Id. This is a somewhat puzzling argument because, as Defendants point out, our city lies more than four times the distance from Patel's counsel's office than does Greenville, South Carolina, where this case will be heard. See Def. Repl. at 3. Even if counsel was

inconvenienced, "[t]he location of counsel carries little, if any, weight in an analysis under § 1404(a)." Tower Labs, Ltd., 285 F. Supp. 3d at 326 (internal quotation marks and citation omitted).

The convenience factors are largely neutral in this case; as a result, the private-interest factors, taken together, favor transfer.

### 2. *Public-Interest Factors*

#### a. Transferee's Familiarity with the Governing Laws

With respect to the first public-interest factor, because Plaintiff's claims are based on federal law, the Court adheres to the principle that "the transferee federal court is competent to decide federal issues correctly." In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (internal citations omitted). Neither party contests that courts in both jurisdictions are equally capable of adjudicating this dispute. This factor, accordingly, is neutral.

#### b. Relative Congestion of the Courts

The second factor addresses the relative congestion of the courts. This Court does not dispute Defendants' statistics demonstrating that the present docket of the District of Columbia is more congested than that of the District of South Carolina. See Def. Mot. to Transfer and Dismiss at 9. It does, however, agree with both parties that this factor should be accorded little or no weight in the transfer analysis. See Pl. Opp. at 9; Def. Mot. to Transfer and Dismiss at 9; see also U.S. v. H & R Block, Inc., 789 F. Supp. 2d 74, 84 (D.D.C. 2011) (treating relative docket congestion as a neutral factor in transfer analysis, as statistics provide only a rough measure at best). Because this factor bears so minimally on the outcome of this action, the Court finds it in equipoise.

8

### c. Local Interest in Controversies

The final factor — the most important amongst the public-interest factors — weighs in favor of transfer, as there is a decided interest in resolving this controversy in Plaintiff's home locale, the District of South Carolina. See Preservation Soc. of Charleston v. U.S. Army Corps of Engineers, 893 F. Supp. 2d 49, 54 (D.D.C. 2012). In determining whether a controversy is local in nature, courts in this district consider myriad factors, including "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy[;] . . . whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." Otay Mesa Prop. L.P. v. U.S. Dep't of Interior, 584 F. Supp. 2d 122, 126 (D.D.C. 2008).

For many of the reasons already explained, this case is a controversy about a South Carolina resident and thus belongs there. Although Plaintiff contends that the "nature of this dispute is not [] local[,]" given that DHS created the policy at issue and "failed to supervise [] USCIS[,]" his suit does not attack DHS policy, but rather specific administrative decisions. See Pl. Opp. at 9. The entire administrative record in this case, furthermore, exists at the USCIS Service Center in Nebraska, but surely South Carolina is a more convenient forum for Plaintiff than the Cornhusker State. See Compl., ¶ 9, Exhs. 2–5.

Courts have explained that disputes should be resolved in the forum of the party "whose rights and interests are in fact most vitally affected by the suit." Adams v. Bell, 711 F.2d 161, 167 n. 34 (D.C. Cir. 1983). Because any potential impacts would be felt locally, and most significantly by Plaintiff, the controversy is "truly local to the District of South Carolina." Preservation Soc. of Charleston, 893 F. Supp. 2d at 58.

In sum, the public-interest factors also favor transfer.

9

## IV.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting the Motion and transferring the case to the District of South Carolina.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 24, 2022